ESTATE OF FRANK L. VAN EPPS: FREELAND VAN EPPS, Individually, Appellant, v. CITY BANK OF PORTAGE and others, Respondents.

*No. 144. Argued September 5, 1968.—Decided October 1, 1968.*
(Also reported in 161 N. W. 2d 278.)

For the appellant there was a brief and oral argument by *Dorothy Walker* of Portage.

For the respondents there was a brief by *Arno J. Miller* of Portage, attorney, and *Rosin & Abel* of Sarasota, Florida, of counsel, and oral argument by *Mr. Miller.*

WILKIE, J. A single issue is presented on this appeal:

Can a surviving partner, acting as coexecutor of the estate of the deceased partner, exercise an option to purchase the deceased partner's interest in the partnership as provided by the terms of the partnership agreement where the will of the deceased partner expressly *requests* that the surviving partner not exercise said option if the exercise of said option is not in the best interests of the heirs of the decedent's estate (so conceded here by the surviving partner) ?

Put another way, the question is whether, after accepting the appointment as executor, the surviving partner can then exercise the option as provided in the

partnership agreement, even though such exercise would be contrary to the express desires of the decedent and contrary to the best interests of the heirs.

This is a case of first impression in Wisconsin. To begin with it is important to note that we are concerned with the exercise of an option to purchase by the surviving partner and not the exercise of an absolute obligation contained in the partnership agreement. Appellant fails to note this distinction in relying on Rowley on *Partnership,* which states:

"He can not in one capacity contract with himself in his other capacity . . . . But such sale may be made when authorized by the partnership agreement." [1]

Nor is the distinction made in relying on Corpus Juris Secundum, which states:

". . . He may, however, carry out a provision in the articles of partnership for the purchase by the survivor of the share of the deceased partner at a valuation arrived at in a prescribed manner; . . . ." [2]

Both of the above sources rely on the California case of *Keyes v. Hurlbert* [3] as their sole authority. In that case the relevant facts are very similar to those of the present case except that there were no express terms in the will requesting the surviving partner not to exercise the option, nor was the amount paid for the property less than the fair market value as determined by appraisers. In the instant case, estate appraisers determined that Frank's one-half interest in the partnership was worth $34,682.45; appellant contends that as computed on the basis of the 1941 partnership agreement the price at which Freeland could acquire said one-half interest in the partnership assets was $23,443.73, or $11,000 less than the market value as determined by the estate appraisers.

[1] Rowley, *Partnership* (2d ed.), p. 699, sec. 37.4.

[2] 68 C. J. S., *Partnership*, p. 791, sec. 286 b.

[3] (D. C. Cal. 1941), 111 Pac. 2d 447.

In *Keyes,* the language most favorable to appellant appears on page 450 of that court's opinion:

"It has been generally held that the same person cannot enter into an agreement between himself as surviving partner and himself as the personal representative of deceased, *but he may, however, carry out a provision in the articles of partnership for the purchase of the share of the deceased partner at a valuation arrived at in a prescribed manner, and where the manner of valuation is not prescribed the burden is upon him to show that the sale price was a fair one.*" [4] (Emphasis added by appellant in brief, p. 14.)

Appellant also relies on the English case of *Hordern v. Hordern.*[5] In that case testator (the deceased partner) had named his partner (also his brother) as executor. The partnership agreement provided that upon the death of either partner the survivor should pay to the executors of the deceased the value of the full share of the decedent's interest in the partnership. Thus the survivor was *obligated* to purchase the interest of the deceased partner. The issue in that case did not center around whether the surviving partner, as executor, had the right or the power to purchase the decedent's partnership share, but rather whether the surviving partner, as executor, with the unavoidable conflict of interest, had properly valued the partnership interest of the decedent in compliance with clause 17 of the partnership agreement. The court, in holding that the executor-surviving partner had complied with the provisions of clause 17, stated that:

"It is no doubt true that the conflict between duty and interest may arise, but it is also true that that conflict is brought about entirely by the action of the late Mr. Anthony Hordern, who appointed Mr. Samuel Hordern his executor in the full knowledge that he would have to exercise on survivance the rights, and come under the

---

[4] *Id.* at page 450.
[5] (1910), A. C. 465.

obligations, stipulated in regard to the surviving partner by the articles of association. The idea that, in consequence of that possible conflict, Mr. Samuel Hordern's duty was to decline the trust reposed in him by his brother is out of the question. . . . *I cannot admit that it was necessary for the person so appointed executor to disclaim the executorship in order to save his contract.*" [6] (Emphasis added by appellant in brief, p. 15.)

Here, the trial court held that the *Hordern Case* did not apply because in that case the surviving partner had a contract which *required* him to buy the partnership interest of the deceased, while in the present case there was only an option to buy. Clearly the *Hordern* court did not address itself to a situation where the executor was in a position to make a choice between one, exercising an option for his own benefit to the detriment of the heirs, and two, foregoing the exercise of the option in accordance with the will and for the benefit of the heirs. As the trial court correctly noted, there was no alternative for the executor-surviving partner in *Hordern,* as was specifically pointed out in the English court's opinion at page 473:

". . . That purchase the articles of partnership had prescribed should take place on the occasion of a partner's death, not as a matter of option, but as a matter of definite and binding agreement. . . . And I read the contract, as I have already said, as being a clear and absolute contract for purchase; not an optional, but a complete contract, binding all parties, for the purchase of the interest of the testator . . . ."

The trial court concluded that:

". . . This is not a situation where the executor was merely carrying out a contract that required no decision on his part; this is a situation where the surviving partner had an option, the exercise of which could result in a

[6] *Hordern v. Hordern, supra,* footnote 5, at page 475.

benefit to him at the expense of the estate he was duty bound to preserve, if he accepted the appointment as executor. He did accept the appointment, and having done so, in the court's opinion he placed himself in a position where he could not exercise his option to purchase unless it resulted in a benefit to the estate, and in that event a sale would have to comply with section 313.093 of the Statutes."

Appellant argues that the executor is responsible for carrying out the terms of the partnership agreement and that if Freeland had declined to act as coexecutor, City Bank would have acted alone and been legally required to comply with the exercise of the option. But this argument erroneously assumes that the issue is whether the executor is duty bound to carry out the provision of the partnership agreement. More accurately, the issue is whether the executor can legally exercise the option—not whether the contract will be enforced if the option is exercised.

The nature of appellant's duties as executor prohibits him, in his individual capacity, from exercising the option.

In *McKeigue v. Chicago & N. W. Ry.*[7] this court stated that:

". . . An executor or administrator is invested with the legal title to the personal property of the estate, but he holds that title charged with the duty of managing and disposing of the same in accordance with the provisions of the will or of the law. His duties are trust duties. In all essential respects he is regarded in courts of equity as a trustee. . . . In the broad sense of the word a trustee is one 'in whom some estate, interest, or power in or affecting property is vested for the benefit of another.' . . . In this sense the term includes executors, administrators, . . . and all persons vested with the title or control of property and charged with fiduciary duties in relation thereto for the benefit of another. . . ."

---

[7] (1907), 130 Wis. 543, 546, 110 N. W. 384.

The Restatement of *Trusts* takes the position that:

". . . the trustee is not under a duty to administer the trust unless he accepts. If he has not accepted, he can disclaim and is under no liability (see sec. 102) ; but once having accepted he is under a duty to administer the trust as long as he continues to be trustee. As to the resignation of the trustee, see sec. 106." [8]

In *Estate of Scheibe* [9] this court recently dealt with the duties and obligations of an executor. In that case decedent had appointed an executor who was given power under the will to sell real estate "without special court authority." The assets of the estate included a parcel of land appraised at $27,500 by court-appointed appraisers as of the date of death. A number of years later the executor sold the property to his sister for $12,800, which was the amount of an appraisal made a few months previously by a private appraiser. The tax-assessed valuation of the property was $13,420. The beneficiaries of the estate objected, but after a hearing the lower court determined that it was satisfied the executor was honest in making the sale to his sister and had received a price in keeping with the market value. This court reversed. We held that the duty of an executor goes beyond "honesty" and "good faith." We stated that:

"A trustee or an executor, in whom there has been imposed a special trust or confidence, must act not only honestly or with good faith in the narrow sense but must also exercise the duty of loyalty toward the beneficiary for whose benefit the power of sale is to be exercised and with such care and skill as a man of ordinary prudence would exercise in dealing with his own property." [10]

Further in the opinion the court stated:

---

[8] Restatement, 1 *Trusts* 2d, p. 363, sec. 169, comment *a*.
[9] (1966), 30 Wis. 2d 116, 140 N. W. 2d 196.
[10] *Id.* at page 119.

"The duty of loyalty requires that the executor not be motivated in his actions by self-interest or the interest of third parties. " [11]

In *Rowell v. Rowell* [12] the administrator-surviving partner sold the assets of decedent's 25 percent partnership interest to a corporation in which the stock was held by the administrator and members of his family. The court stated:

"To such a transaction the rule of law applicable in this state has nothing of uncertainty. The sale is valid or voidable at the choice of those for whom he was fiduciary, and that, too, without regard to any conscious purpose to wrong or defraud them." [13]

The Restatement of *Trusts* states as to Duty of Loyalty:

"(1) The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.
"(2) The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know." [14]

The matter presently before this court can be characterized as follows: No one disputes the fact that Freeland Van Epps has certain individual rights under the partnership agreement; nor does anyone argue that in his capacity as executor he does not owe the above-mentioned fiduciary duties to the beneficiaries under the will. The question is whether Freeland Van Epps' individual *rights* under the contract take precedence over his *duties* as executor. If Freeland's exercise of the option is to be sustained, it must be sustained as an exercise in his in-

[11] *Id.* at page 121.
[12] (1904), 122 Wis. 1, 99 N. W. 473.
[13] *Id.* at page 13.
[14] Restatement, 1 *Trusts* 2d, p. 364, sec. 170.

dividual capacity because the exercise was contrary to the interests of the beneficiaries and, therefore, could not be exercised in his capacity as executor. Thus, to permit the exercise in his individual capacity would mean, in effect, that an executor at his option could relieve himself of his duties as executor and act in his own interests. This he should not be able to do. He is duty bound to act in the interests of the beneficiaries *at all times* with respect to the property in the estate.

To accept the position of appellant would require the court to hold in effect that the executor is duty bound to act in the interests of the beneficiaries except where his individual rights under the contract with decedent come into conflict with the interests of the beneficiaries— and then the executor can put aside his responsibilities as executor and act in his own interests as an individual. Such a result is contrary to the spirit of the above-mentioned authorities [15] and does not adequately protect the interests of the beneficiaries. It is argued that the beneficiaries are no worse off if Freeland is permitted to exercise the option because undoubtedly if he were not executor he would exercise it anyway. *But,* this may not be true as is illustrated by this very case. Not only did Freeland Van Epps elect to exercise the option to the detriment of the beneficiaries, but he also sold the partnership interest to himself at a price lower than that which the partnership contract could arguably be taken to require. It is possible that an "independent" executor would have required a price at market value. In effect, Freeland Van Epps wore two hats, one when he was setting his own price at which the sale was made to himself, and the other when he made the purchase.

The trial court also correctly determined that even if the exercise of the option was in the best interest of the

[15] *See also Will of Leonard* (1930), 202 Wis. 117, 230 N. W. 715; *Estate of Martin* (1963), 21 Wis. 2d 334, 124 N. W. 2d 297; *Frick v. Howard* (1964), 23 Wis. 2d 86, 126 N. W. 619.

beneficiaries, the transaction did not meet the requirements of sec. 313.093, Stats., which reads in part:

"No executor or administrator of any estate shall purchase or be interested in the purchase of any part of the personal property of the estate sold . . . unless such sale is made with written consent of the parties concerned . . . and approval of the court after notice and hearing, except where such purchase is authorized by will of a decedent. . . ."

The court stated that:

". . . It is the court's opinion that the power conferred by paragraph Ninth d would prevail over any inference of a power to sell generally and that the proper procedure for the executor to have followed on receipt of the notice of exercise of the option was to petition the court for authority to sell. This procedure would have been appropriate even if Freeland Van Epps had not been executor, because the interest in the partnership is by paragraph Five of the will specifically bequeathed to the three children equally."

*By the Court.*—Judgment affirmed.